**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **BRENDA MOUNTAIN,** ) | |
| ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 5:20-CV-406 (MTT)** |
| ) | |
| **GREGORY DOZIER,** *et al.*, ) | |
| ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## ORDER

Defendants Gregory Dozier, Jay Sanders, Benjamin Ford, Tracy McIntyre, Joseph Polite, Theresa Lindsey-Thornton, Thomas Sumpter, Timothy Roberts, Nancy Lawson, Reginald Clark, Curtis Carter, and Mark Agbaosi have moved to dismiss Plaintiff Brenda Mountain's claims. Because the plaintiff has failed to properly allege that the defendants were deliberately indifferent to a known substantial risk of serious harm and she has failed to establish that qualified immunity does not bar her claims, the defendants' motion to dismiss (Doc. 16) is **GRANTED**.

## I. BACKGROUND

### A. Motion for Expedited Discovery

The plaintiff has moved for expedited discovery. Doc. 19. The plaintiff argues that she has attempted to gather information related to this case, but her efforts have been unsuccessful. *Id*. ¶ 6. She points to two open records requests she sent to the Georgia Department of Corrections and to the Georgia Bureau of Investigation on June

8, 2021.  *Id.* ¶ 1; 8-11.  These requests were denied based on statutory privilege.[1]

Thus, the plaintiff argues that there is good cause to allow expedited discovery because

she "cannot properly respond to the Defendants' motion to dismiss without having

access to specific facts relating to the Decedent's murder on December 27, 2018."  *Id.*

Usually, the Court has broad discretion over the management of pretrial activities

and may grant expedited discovery if good cause is shown.  *Johnson v. Bd. of Regents*

*Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001); *Arista Records LLC v. Does 1-7*,

2008 WL 542709, at *1 (M.D. Ga. Feb. 25, 2008).  However, when the defense of

qualified immunity is raised, the Eleventh Circuit has instructed district courts "to resolve

the immunity defense 'before requiring that the parties litigate [the] claims any further.'"

*R.F.J. v. Fla. Dep't of Child. and Families*, 743 F. App'x 377, 390 (11th Cir. 2018)

(quoting *Howe v. City of Enterprise*, 861 F.3d 1300, 1303 (11th Cir. 2017)).  This is

because "immunity is a right not to be subjected to litigation beyond the point at which

immunity is asserted."  *Howe*, 861 F.3d at 1302.  In other words, the defense of

qualified immunity is "an immunity from suit, rather than a mere defense to liability."  *Id.*

(quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Accordingly, when a defendant

raises the defense of qualified immunity in a motion to dismiss, the court must take the

plaintiff's allegations as true and determine whether they assert a violation of a clearly

established constitutional right.  *Joseph v. Gee*, 708 F. App'x 642, 643-44 (11th Cir.

2018) (reversing district court that deferred decision on qualified immunity because of a

lack of facts) (citing *Howe*, 861 F.3d at 1302); *see also R.F.J.*, 743 F. App'x at 380

---

[1] Specifically, the Georgia Department of Corrections cited O.C.G.A. § 42-5-36(c), which states, "[a]ll institutional inmate files and central office inmate files of the department shall be classified as confidential state secretes and privileged under law."  Doc. 19 at 11.

(reversing district court that deferred ruling on qualified immunity and directed the parties to commence discovery).

To the extent district courts retain discretion to order discovery in the face of a qualified immunity motion to dismiss, it would not be appropriate to exercise that discretion here.  The plaintiff did not file suit until shortly before the running of the statute of limitations.  She did not sue the officers directly involved in Mountain's death, and she does not claim to have made any effort to discover the identities of those officers before filing suit.  Nor did she name John Doe defendants pending the discovery of the identity of those officers.  After filing suit, the plaintiff failed to timely serve most of the defendants and, when ordered to show cause why her case should not be dismissed for failure to serve, she had no compelling excuse.  Doc. 6.  Moreover, the plaintiff's two open records requests were sent on June 6, 2021, two and half years after the incident in question, eight months after the lawsuit was filed, and eighteen days after the defendants filed their motion to dismiss.  Doc. 19 ¶ 1, 8-9.  Under these circumstances, it would not be appropriate to subject the defendants to further litigation.

Therefore, the plaintiff's motion for expedited discovery (Doc. 19) is **DENIED**.

## B. Factual Allegations

On December 27, 2018, Joseph Mountain, a state prisoner, was found unresponsive in the showers at Georgia Diagnostic and Classification Prison ("GDCP"). Doc. 1 ¶ 10.  Mountain was taken to a local hospital, and the next day he died from head injuries.  *Id*.  His death was deemed a homicide, but, according to the plaintiff, the exact circumstances of his death are unknown.  *Id*. ¶¶ 31, 38.

Mountain's mother and the administrator of his estate, Plaintiff Brenda Mountain, sued the defendants for Eighth Amendment violations pursuant to 42 U.S.C. § 1983. *Id.* ¶¶ 40-44. She alleges that the defendants, as supervisors either at GDCP or the Georgia Department of Corrections, knew the security at GDCP "had deteriorated to unconstitutional levels." *Id.* ¶ 1. She further alleges that Mountain was killed by another inmate or inmates who, because of inadequate security, "were able to freely and secretly assault and murder Mr. Mountain without detection, while in the showers at [GDCP]." *Id.* ¶ 10. Specifically, the plaintiff alleges the following conditions posed a substantial risk of harm to inmates at GDCP:

> (a) Longstanding and pervasive problems of violence.
> (b) Critical security posts that were unmanned because the prison was understaffed.
> (c) Known violent prisoners were not monitored and supervised, which contributed to inmate-on-inmate violence.
> (d) Due to new construction, camera viewing was obstructed.
> (e) In certain dorms no cameras were installed.
> (f) In the vast majority of dorms, cameras were installed but not working.
> (g) Lack of workable locks on cell doors.
> (h) A complete lack of security of the shower areas, creating a breeding ground of criminal behavior.

*Id.* ¶ 20.

The plaintiff alleges that because the defendants were aware of the security issues at GDCP, and because they did not remedy those issues, they "acted with deliberate indifference to the safety of Mr. Mountain and other prisoners and officers at [GDCP]." *Id.* ¶ 42. To buttress these allegations, the plaintiff alleges two other inmates were killed at GDCP in the last decade; one was stabbed as he exited a transport bus in 2013 and another was thrown over a second-story railing in 2012. *Id.* ¶ 1. These two incidents are the only factual allegations supporting the plaintiff's claim that GDCP

suffered from "[l]ongstanding and pervasive problems of violence," or that there was any inmate-on-inmate violence.

The defendants argue that the plaintiff has failed to state a claim because, other than the two incidents from 2012 and 2013, the complaint lacks specific allegations of prior violence at GDCP.  Docs. 16-1 at 11-13; 24 at 2-3.  The defendants also argue that qualified immunity bars the plaintiff's claims.  Docs. 16-1 at 14-15; 24 at 7.

## II. STANDARD

The Federal Rules of Civil Procedure require that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To avoid dismissal pursuant to Rule12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible."  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *FindWhat Inv'r Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (internal quotation marks and citations omitted).  But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Wiersum v. U.S. Bank, N.A.,* 785 F.3d 483, 485 (11th Cir. 2015)

(internal quotation marks and citation omitted).  The complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).  Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts.  *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018) (citations omitted).

### III. DISCUSSION

The plaintiff asserts a claim against the defendants for deliberate indifference to a substantial risk of serious harm.  Docs. 1 ¶¶ 40-44; 23 at 9-14.  The plaintiff states that GDCP "was in a state of chaos through the neglect and mismanagement of Defendants, and that a group of inmates used that opportunity to attack and murder Joseph Mountain."  Doc. 23 at 13.  The plaintiff further argues that it does not matter that she cannot show that any guards specifically knew that Mountain faced a risk, because all inmates faced a risk at GDCP.  *Id*. at 14.  Thus, the plaintiff is clearly attempting to establish an Eighth Amendment supervisory liability claim based on the defendants' alleged deliberate indifference to a generalized risk of harm created by their failure to remedy certain security deficiencies.

"Prison officials have a duty … to protect prisoners from violence at the hands of other prisoners," but not every claim of inmate-on-inmate violence will give rise to constitutional liability.  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  To show a violation of Mountain's Eighth Amendment rights, the plaintiff must show "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."  *Hall v. Tallapossa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).

The first element of deliberate indifference—whether there was a substantial risk of serious harm—is assessed objectively and requires the plaintiff to show conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety. The second element—whether the defendant was deliberately indifferent to that risk—has both a subjective and an objective component. Subjectively, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and also draw the inference. Objectively, the official must have responded to the known risk in an unreasonable manner, in that he or she knew of ways to reduce the harm but knowingly or recklessly declined to act. Finally, the plaintiff must show a necessary causal link between the officer's failure to act reasonably and the plaintiff's injury.

*Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (citations and ellipsis omitted).

To establish deliberate indifference based on a generalized risk of harm, a plaintiff must allege facts tending to show "that serious inmate-on-inmate violence was the norm or something close to it." *Purcell ex rel. Estate of Morgan v. Toombs Cnty.*, 400 F.3d 1313, 1320 (11th Cir. 2005). "Occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, but confinement in a prison where violence and terror reign is actionable." *Id.* at 1322. The Eleventh Circuit has also held that allegations of certain prison conditions may properly allege a substantial risk of serious injury even without an extensive history of inmate-on-inmate violence, but these conditions still must be extreme. *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1029 (2001); *Marbury*, 936 F.3d at 1240 (Rosenbaum, J., dissenting).

As for causation, the necessary link to the alleged injury can be shown when supervisors are aware of extreme deficiencies in a prison's security causing a substantial risk of serious harm to prisoners yet do nothing to address those

deficiencies.  *Dickinson v. Cochran*, 833 F. App'x 268, 272 (11th Cir. 2020) (citing *Marsh*, 936 F.3d at 1034).

The plaintiff alleges there were many deficiencies with staffing and security at GDCP preceding the death of Mountain.  Perhaps most relevant to Mountain's death, the plaintiff alleges the showers lacked working cameras.[2]  Doc. 1 ¶¶ 4-5.  She also alleges that GDCP "houses some of Georgia's most challenging offenders," and "[a]ll inmates at [GDCP] are deemed security risks and considered maximum security inmates."  *Id.* ¶¶ 2- 3.  The plaintiff further alleges that the defendants—supervisors at GDCP or the Georgia Department of Corrections—were aware of the security risk and did not address these risks.  But to properly allege a deliberate indifference to a substantial risk of harm arising from a general risk of inmate-on-inmate violence, a plaintiff must first allege that there was an excessive risk of inmate-on-inmate violence.  *Purcell*, 400 F.3d at 1320 ("We accept that an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm; occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, [but] confinement in a prison where violence and terror reign is actionable.").

In *Harrison v. Culliver*, the plaintiff alleged that prison officials were deliberately indifferent to the risk of serious harm to inmates, specifically the risk of assault in a certain hallway where homemade weapons were sometimes used.  746 F.3d 1288, 1299 (11th Cir. 2014).  In the five years prior to the attack on the plaintiff, four inmate-

---

[2] The plaintiff appears to fault the defendants for not having cameras in the showers and for providing inmates privacy while showering.  Doc. 1 ¶ 5.  The Eleventh Circuit has held that "prisoners retain a constitutional right to bodily privacy."  *Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir. 1993) (holding male prisoners' rights to bodily privacy may be violated by allowing female correctional officers to view them in a state of nudity).  Thus, as the defendants put it, the plaintiff faults them for not violating the inmates' right to privacy.

on-inmate assaults occurred in this hallway and at least thirty-three incidents occurred throughout the prison involving weapons. *Id*. Nonetheless, the Eleventh Circuit held that because the prison was "a large institution … the thirty-three incidents involving weapons, only four of which occurred in the back hallway, are hardly sufficient to demonstrate that [the prison] was a prison 'where violence and terror reign.'" *Id*. at 1300 (quoting *Purcell*, 400 F.3d at 1320); *see also Rhiner v. Sec'y, Fla. Dept. of Corr*., 817 F. App'x 769, 776 (11th Cir. 2020) (ten gang-related assaults in the two years preceding the assault in question was too infrequent to establish a substantial risk of serious harm from inmate-on-inmate violence); *Marbury*, 936 F.3d at 1234 (fifteen stabbings in the prison over a six-year period was insufficient to establish a substantial risk of serious harm from inmate-on-inmate violence).

The only two prior incidents that the plaintiff alleges are a stabbing in 2013 and a prisoner being thrown over a second-story railing in 2012, five and six years before the attack on Mountain. Doc. 1 ¶ 1. Neither of these attacks occurred in the showers. Accordingly, the plaintiff has not plausibly alleged that inmate-on-inmate violence was the norm or that violence was rampant in GDCP, much less that the type of violence that Mountain suffered from was rampant.

Citing *Marsh v. Butler County, Ala*., the plaintiff argues she has plausibly alleged there was an objectively substantial risk of serious harm based on security deficiencies. 268 F.3d 1014 (11th Cir. 2001). There, the Eleventh Circuit held that the plaintiff had properly alleged a substantial risk by alleging:

> 1) there was no segregation of nonviolent inmates from violent inmates, pretrial detainees from convicted criminals, juveniles from adults or inmates with mental disorders from those without mental disorders, 2) at times the Jail housed more prisoners than the cells could accommodate,

3) the Jail was routinely understaffed, 4) no head counts of prisoners were made to make sure they were all accounted for, 5) locks on cell doors were not functional, allowing inmates to roam freely at all hours of the day, 6) homemade weapons were readily available by fashioning weapons from material torn from the dilapidated structure of the Jail, 7) no lock down of prisoners in their cells occurred at any point during the day or night, 8) cells were not visually inspected, 9) no jailer was assigned to maintain prisoners' security on the second floor where most of the inmates were housed, 10) the Jail was not operated in accordance with written policies, 11) inmates were not screened for mental health, medical conditions or conflicts with other prisoners before entering the Jail, and 12) prisoners were not disciplined or segregated when they attempted to escape, threatened jailers, destroyed property or assaulted other inmates.

*Id*. at 1029.

The plaintiff's allegations concerning GDCP do not rise to the extreme situation alleged in *Marsh*.  For example, in *Marsh*, the plaintiffs alleged that guards were afraid to go onto the second floor of the jail, where most of the inmates were kept, and the only way for inmates to contact the guards was by screaming or banging on walls.  *Id*. at 1024-25.  Moreover, the allegations of security conditions at the jail in *Marsh* were directly relevant to the attacks on the plaintiffs; each alleged security deficiency in *Marsh* arguably contributed to the attacks.  *Id*.  Here, on the other hand, the plaintiff's allegations are almost all unrelated in any direct way to the attack on Mountain.  For example, the allegations of inoperable locks and inadequate cameras in dorms are irrelevant to the attack on Mountain in a shower.

The Eleventh Circuit has recently stated that in cases like *Marsh*, where "a generalized risk of violence from a prison population could support a claim of deliberate indifference to a substantial risk of serious harm, [plaintiffs have] pointed to specific features of a facility or its population rendering it particularly violent."  *Marbury*, 936 F.3d at 1235.  Here, the plaintiff generally points to factors at GDCP that might suggest a risk

of general prison violence, but she does not plausibly allege specific features of the prison that would make it particularly violent.[3]

In *Dickinson v. Cochran*,[4] the Eleventh Circuit held that a plaintiff had properly alleged a claim based on a general risk of violence.  833 F. App'x 268, 273 (11th Cir. 2020).  The plaintiff alleged the jail in question was overcrowded, did not segregate inmates based on propensity to violence, and allowed the introduction of contraband by not searching inmates.  *Id*. at 272-73.  The plaintiff in *Dickinson*, a non-violent, first-time offender, was stabbed and beaten by an enraged convicted murderer; thus, the alleged security deficiencies were relevant to the attack.  Further, the plaintiff alleged the security deficiencies had resulted in a "history of widespread inmate-on-inmate abuse at the jail [that the defendants] failed to do anything about it."  *Id*. at 272.  To support this, the plaintiff alleged in his complaint that the Department of Justice had previously investigated the prison and "noted a high, and increasing, level of inmate-on-inmate violence … [and] pointed to one four-month period in which the jail reported 89 fights."  *Id*. at 269.  Accordingly, the plaintiff had not only alleged relevant and extreme security deficiencies, but also alleged specific facts of widespread violence.

Here, on the other hand, the plaintiff has alleged deficiencies with the security at GDCP that are mostly unrelated and irrelevant to the violence Mountain suffered, and more importantly, the plaintiff has not alleged adequate facts demonstrating a substantial risk of violence in the prison.

---

[3] Again, the plaintiff does include a conclusory allegation that GDCP suffered from "[l]ongstanding and pervasive problems of violence."  Doc. 1 ¶ 20.  But the only specific facts the plaintiff alleges concerning violence are the murders in 2012 and 2013, the circumstances of which bear no relation to the attack on Mountain or violence in the showers.

[4] Although *Dickenson* was an unpublished opinion, its emphasis on the alleged security deficiencies *causing known* widespread violence in the prison persuades the Court.

Finally, the plaintiff does allege that there was "[a] complete lack of security of the shower areas, creating a breeding ground of criminal behavior."[5]  Doc. 1 ¶ 20. However, the plaintiff appears to concede in her complaint that the showers may have been monitored by some guards: "The showers, though possibly monitored by an undisclosed amount of guards, provide areas that present an essential breeding ground for criminal behavior.  It is well known that the prisoners at [GDCP] are dangerous; however, there are no cameras in the showers and the amount of guards are greatly surpassed by the number of prisoners."  Doc. 1 ¶ 5.  But to state a claim for a deliberate indifference, the risk of injury must be a strong likelihood, and not a mere possibility. *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990).  Simply alleging that prisoners were not monitored in the shower, without more, does not properly allege that there was a strong likelihood of injury, as opposed to a possible risk.  Moreover, even if there were no guards monitoring the showers at the time of the attack, "the Eighth Amendment does not require the uninterrupted personal supervision of all inmates."  *Estate of Owens v. GEO Group, Inc.*, 660 F. App'x 763, 773 (11th Cir. 2016) (citing *Purcell*, 400 F.3d at 1323 n.23).  Accordingly, the plaintiff has not properly alleged that there was a substantial risk of serious injury.  Thus, the plaintiff's deliberate indifference claims against the defendants based on their failure to remedy security deficiencies fails.

Of course, the plaintiff's failure to plausibly allege the violation of a constitutional right means the defendants are entitled to qualified immunity.[6]  *Lewis v. City of W. Palm*

---

[5] The plaintiff's "breeding ground" part of this allegation is disregarded as conclusory; she does not allege that a single other inmate-on-inmate incident ever occurred in the showers.

[6] The defendants argue—and the plaintiff does not dispute—that the defendants were acting within their discretionary authority.  Docs. 16-1 at 14; 23 at 16.

*Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009) (stating that to overcome qualified immunity a plaintiff must establish that "the officer's conduct amounted to a constitutional violation" and "the right violated was clearly established at the time of the violation").  And while the plaintiff's failure to state a claim means she cannot satisfy the first prong of qualified immunity analysis—establishing a constitutional violation—the thinness of her allegations is particularly problematic in the context of qualified immunity generally.  How, given the plaintiff's conclusory allegations, could it be said the defendants were on notice that their conduct, whatever it may have been, was unconstitutional?

## IV. CONCLUSION

Because the plaintiff has failed to properly allege that the defendants were deliberately indifferent to a known substantial risk of serious harm and she has failed to establish that qualified immunity does not bar her claims, the defendants' motion to dismiss (Doc. 16) is **GRANTED** and the plaintiff's complaint is **DISMISSED** without prejudice.

**SO ORDERED**, this 17th day of August, 2021.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT